U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

**United States Bankruptcy Judge**

Signed September 17, 2010

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CHAPTER 11 |
| KLAAS TALSMA | § | |
| d/b/a KLAAS TALSMA DAIRY | § | |
| d/b/a FRISIA FARMS | § | CASE NO. 10-43790-DML-11 |
| FRISIA FARMS, INC. | § | CASE NO. 10-43791-DML-11 |
| FRISIA HARTLEY, LLC, | § | CASE NO. 10-43792-DML-11 |
| | § | |
| DEBTORS. | § | JOINTLY ADMINISTERED |
| | § | |

### MEMORANDUM OPINION AND ORDER

Before the court is the United States Trustee's (the "UST") limited objection (the "Objection") to the Application to Employ Boucher, Morgan and Young, P.C., Accountants (the "Application"), filed by Klaas Talsma d/b/a/ Klaas Talsma Dairies d/b/a Frisia Farms ("Talsma"); Frisia Farms, Inc. ("Frisia Farms"); and Frisia Hartley, LLC ("Frisia Hartley," and, collectively with Talsma and Frisia Farms, "Debtors"). The court

held a hearing on the Application and Objection on July 19, 2010, and, at the court's suggestion, Debtors and the UST thereafter submitted supplemental briefs respecting the Application.[1]

The court exercises core jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A). This memorandum opinion constitutes the court's findings of fact and conclusions of law. FED. R. BANKR. P. 9014 and 7052.

**I. BACKGROUND**

Debtors are three related entities engaged in dairy farming. Frisia Farms owns the cows that are milked. Frisia Hartley raises heifers in Hartley County, Texas. Talsma cares for and milks the grown cows in Hico, Texas.

As the price of milk and dairy cows dropped during the months preceding their chapter 11 filings, Debtors encountered financial difficulties. As a result, on June 1, 2010, each filed for relief under chapter 11 of the Code. The court has entered an order directing joint administration of the three cases.

Boucher, Morgan & Young, P.C., Accountants ("BMY"), is an accounting firm located in Stephenville, Texas, near Hico. The firm is one of only a few accounting firms in the Hico area and specializes in accounting for the dairy business. By the Application, Debtors seek to employ BMY to perform routine accounting work, including compiling financial statements, preparing payroll, and preparing income tax returns. BMY performed this type of work for Debtors prior to Debtors' chapter 11 filings. BMY is thus familiar with Debtors' operations, and Debtors have indicated it would be expensive and time-consuming to hire another firm to perform Debtors' accounting work. BMY is

---

[1] At the hearing, Ron Wulf, a principal of BMY, testified. There is no disagreement respecting the facts relevant to disposition of the Application.

2

one of the 20 largest creditors of both Talsma and Frisia Farms,[2] *see* FED. R. BANKR. P. 1007(d), and is owed a combined total of $11,700 by Debtors. The UST does not argue—nor is there any suggestion in the record—that BMY's loyalty to Debtors or its performance of its duties would be in any way affected by its status as a creditor.

Because BMY is a prepetition creditor of Debtors, however, the UST will only agree to BMY's employment if BMY waives its prepetition claims. BMY would thus become disinterested by definition under section 101(14) of the Bankruptcy Code (the "Code")[3] and, in the UST's view, be eligible for employment under section 327(a) of the Code.[4] Debtors, on the other hand, contend section 1107(b) of the Code allows the debtor in possession to employ a prepetition creditor despite section 327(a) if the creditor's claim arose as a result of prepetition professional work for the debtor.

**II. DISCUSSION**

The issue before the court requires consideration of the interrelation of sections 327 and 1107 of the Code. Section 327(a) sets out the requirements for employment of a professional by a trustee. Section 1107(b) modifies these requirements with respect to employment of a professional by a debtor in possession.

**A. Section 327(a)**

Section 327(a) of the Code establishes the eligibility of professionals for employment by a trustee: "[T]he trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that

---

[2] The UST was unable to form an unsecured creditors' committee per 11 U.S.C. § 1102 in these cases. Rule 1007(d) requires the list of 20 largest creditors to facilitate formation of a committee.

[3] 11 U.S.C. §§ 101 et seq. Unless otherwise specified, all references to the Code are to the Code in its present form.

[4] BMY, if forced to do so, is prepared to waive its claim in order to be employed by Debtors. Thus, whether BMY may retain its claim is the only issue presented to the court.

3

do not hold or represent an interest adverse to the estate, and that are *disinterested persons*, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a) (emphasis added). A "disinterested person" is, among other things, "a person that . . . is not a creditor." 11 U.S.C. § 101(14)(A). Thus, the language of section 327(a), as explained by section 101(14)(A), means that a debtor's prepetition creditors are ineligible to be employed by a trustee because these creditors are "not [] 'disinterested' person[s]." *In re Viking Ranches, Inc.*, 89 B.R. 113, 114 (Bankr. C.D. Cal. 1988).

The Code's restrictions applicable to a trustee also generally apply when the estate is managed by a debtor in possession under chapter 11. *See* 11 U.S.C. § 1107(a) (subject to certain limitations not relevant to this case, "a debtor in possession shall have all the rights . . . and powers, and shall perform all the functions and duties . . . of a trustee serving in a case under this chapter"). Debtors remain in possession of and continue to operate Debtors' business, acting in lieu of a trustee. Therefore, absent relinquishment of BMY's claims, Debtors may not employ BMY if no exception to section 327(a)'s "disinterested person" requirement exists.

**B. Section 1107(b)**

Section 1107(b) alters the requirements of section 327(a) where the debtor in possession seeks to employ a professional who performed prepetition work for the debtor: "*Notwithstanding section 327(a) of this title*, a person is not disqualified for employment under section 327 of this title by a debtor in possession *solely because of such person's employment by or representation of the debtor before the commencement of the case*." 11 U.S.C. § 1107(b) (emphasis added). The UST contends that the law is

clear that section 1107(b) does not permit the debtor in possession to employ a professional who is also a prepetition creditor. In fact, the case law construing sections 1107(b) and 327(a) is unsettled and not uniform. *See generally* 7 COLLIER ON BANKRUPTCY ¶ 1107.04[3] (16th ed. 2009).

Case law offers two interpretations of section 1107(b). A minority of courts read sections 1107(b) and 327(a) to allow a debtor in possession to employ a creditor professional so long as the professional's prepetition claim arose from prior professional work for the debtor. *See, e.g.*, *In re Microwave Prods. of Am., Inc.*, 94 B.R. 971, 974 (Bankr. W.D. Tenn. 1989) (a professional is not disqualified under section 327(a) when its creditor status arose as a result of prepetition employment); *In re Viking Ranches, Inc.*, 89 B.R. at 115 (same); *In re Best W. Heritage Inn P'ship*, 79 B.R. 736, 740-41 (Bankr. E.D Tenn. 1987) (a professional should not be automatically disqualified from postpetition employment solely because that professional is owed a fee for prepetition, non-bankruptcy work); *In re Heatron*, 5 B.R. 703, 705 (Bankr. W.D. Mo. 1980) (attorney's status as creditor "has less significance when his service to the estate will be only a continuation" of prior service to the debtor).

On the other hand, more courts hold that section 1107(b) bars a debtor in possession from employing a professional holding a prepetition claim arising from prior employment by the debtor. These courts read section 1107(b) to unambiguously exempt professionals from disqualification based on prior employment alone, but not where the debtor owes the professional fees for prepetition work. *See, e.g.*, *E. Charter Tours*, 167 B.R. 995, 996 (Bankr. M.D. Ga. 1994) (Congress has not exempted prepetition fee claims as a basis for disqualification of professionals); *In re Pierce*, 809 F.2d 1356, 1362-63 (8th

5

Cir. 1987) (Congress did not intend section 1107(b) to prevent disqualification of any professional who is a prepetition creditor). Courts following the majority approach allow a debtor in possession to employ a professional who is a prepetition creditor only if the professional waives the prepetition claim. *See, e.g.*, *E. Charter Tours*, 167 B.R. at 998.[5]

The Fifth Circuit has not directly addressed this issue, nor have the courts of this district focused on it. The UST cited an opinion of this court, *In re Hargis*, 148 B.R. 19 (Bankr. N.D. Tex. 1991), in its brief in support of the majority rule. That case, however, deals with disgorgement of fees paid to a professional, approval for the employment of which professional was never sought. *Id*. at 22. *Hargis* only explains that a prepetition creditor is not disinterested under the Code. *Id*. It does not address how section 1107(b) affects section 327(a)'s requirement that a professional be disinterested.

### 1. Construing Section 1107(b)

The question before the court is whether section 1107(b) alters section 327(a)'s requirement that a professional retained by a debtor in possession not be disinterested by reason of holding a prepetition claim. The court concludes that the minority interpretation of section 1107(b), which allows the debtor in possession to employ a creditor professional, is the better way to construe the statute.

---

[5] One court permitted a debtor in possession to employ a professional where the professional's prepetition claim arose from work done in preparation for the bankruptcy, but not from other, unrelated work. *See In re Hub Bus. Forms, Inc.*, 146 B.R. 315 (Bankr. D. Mass. 1992). A broader interpretation of sections 327(a) and 1107(b) is more appropriate. First, it makes little sense to open the door only a crack—either section 1107(b) read with section 327(a) permits a court to allow the debtor in possession to employ creditor professionals, or it does not. And second, the *Hub* court's construction of the statute exempts attorneys who prepare the bankruptcy petition from the disinterestedness requirements while ignoring other professionals who perform crucial services for the debtor. The role of accountants like BMY is to create and keep records that report a company's financial state. This record-keeping is important to parties leading up to and during the bankruptcy. To allow employment of accountants notwithstanding a claim arising from work that is necessary to and useful in the preparation of a bankruptcy—even if the unpaid fees were not generated through actual preparation for filing—ensures that the debtor in possession will continue to employ competent professionals with a working knowledge of the debtor's affairs.

The court must look first to the language of the statute. If the meaning of section 1107(b) is clear, then the court need go no further in construing it. *See, e.g.*, *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) ("'[W]hen the statute's language is plain, the sole function of the courts . . . is to enforce it according to its terms.'" (citations omitted)); *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (same).

The court does not find section 1107(b)'s language, read in isolation, to mandate either requiring or not requiring professionals employed by the debtor in possession to be perfectly disinterested. In the court's view, the majority's construction of section 1107(b) places undue weight on the adverb "solely" and so fails to give meaning to the provision's opening clause "[n]otwithstanding section 327(a) of this title . . . ." 11 U.S.C. § 1107(b). By stressing the word "solely," the majority concludes that section 1107(b) provides a very limited exception to section 327(a)'s requirement that a debtor in possession employ only disinterested professionals—a professional is not *per se* disqualified from post-petition employment "solely" because the professional performed prepetition work for the debtor. If the debtor owed the professional money for this prepetition work, however, the professional would be a "creditor" and therefore not disinterested under section 101(14)(A) and so would not be employable under section 327(a).

However, the words of section 1107(b) do not preclude a construction extending its exemption to the necessary consequences of prepetition employment, including an economic nexus between the debtor and the professional—a professional involved in a prepetition relationship with the debtor will have been paid or will be owed money. Section 1107(b)'s language is not strained by including the necessary economic attribute

7

of the relationship—payment made or due for prior services rendered—within the exemption for "employment by or representation of the debtor."

It is a maxim of statutory construction that each statutory provision must have a purpose. *See TRW, Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (internal quotations omitted)). This rule of construction requires that the court give meaning to the words "[n]otwithstanding section 327(a) of this title."

Nothing in the language of sections 327(a) and 101(14)(A) provides that a professional is not disinterested (or otherwise disqualified from retention) merely because of prior employment by the debtor. Rather, only a professional with a greater stake in the bankruptcy, such as one occupying the position of creditor, equity security holder, or insider, is deemed not disinterested by the plain meaning of sections 327(a) and 101(14)(A).[6] Therefore, for the words "[n]otwithstanding section 327(a) of this title" to have any effect, section 1107(b) must do more than exempt professionals from disqualification based on just the fact of prepetition employment by the debtor. If

---

[6] The definition of disinterestedness under the former Bankruptcy Act specifically provided that a person was not disinterested if the person "is, or was within two years prior to . . . the filing of the petition . . . an attorney for the debtor . . . ." Act § 158(3); 6 (Part 2) COLLIER ON BANKRUPTCY ¶ 7.08(4) (14th ed. 1978). Congress's decision not to so provide in section 101(14) of the Code supports the court's conclusion that a debtor's prepetition professionals are not, *per se*, not disinterested.

Moreover, prior to 2005, section 101(14) specifically characterized investment bankers who had provided prepetition services to the debtor as not disinterested, a requirement Congress removed when it passed the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. 11 U.S.C. § 101(14)(B)–(D) (2000). The pre-2005 Code did not so characterize other types of professionals, indicating Congress did not intend section 327(a) to bar a debtor in possession (or a trustee) from employing other professionals solely because of prepetition employment by or representation of the debtor.

Congress had not intended to provide an exception beyond the mere fact of prepetition employment by or representation of the debtor, section 1107(b) would not need its introductory clause.[7]

An obvious consequence of prepetition employment by the debtor that would prevent a professional from meeting the definition of "disinterested person" is that the professional would be owed money and thus be a creditor. Being a creditor would leave the professional not disinterested, and so not employable by virtue of section 327(a). Therefore, the more sensible interpretation of section 1107(b) is that Congress intended to allow employment by a debtor in possession of its prepetition professionals "in spite of" section 327(a)[8]—i.e., regardless of whether they held claims against the debtor in possession[9] so long as the otherwise disqualifying fact is necessarily coupled to the professional's prepetition employment.[10]

When defining the scope of the authority of the debtor in possession, if a provision of the Code is susceptible to two constructions, one of which permits and the

---

[7] Thus, section 327(c), which allows employment by the trustee of a professional that represented or was employed by a creditor, uses the same language as section 1107(b)—"a person is not disqualified for employment . . . solely because of such person's employment by or representation of a creditor"—but without the introductory clause, "[n]otwithstanding section 327(a)" found in section 1107(b). 11 U.S.C. § 327(c). Section 1107(b) would accomplish the limited exception accorded its language by the majority of courts were it phrased the same as section 327(c).

[8] BLACK'S LAW DICTIONARY defines "notwithstanding" to mean "[d]espite; in spite of." BLACK'S LAW DICTIONARY 1094 (8th ed. 2004).

[9] Section 1107(b), of course, could alternatively be read to trump the other test of section 327(a)—that the professional "not hold or represent an interest adverse to the estate." It seems unlikely that Congress would have intended to disqualify a creditor-professional from employment by a debtor in possession while countenancing employment by that fiduciary of a professional postured in opposition to the very *res* in that fiduciary's custody.

[10] Congress could have specified in section 1107(b) that a person employed under that provision must be disinterested, as it did in, e.g., sections 332(a), 333(a)(2)(A), 701(a)(1), 1104(d), 1163, 1202(a) and 1302(a). Compare sections 782(a)(1), 926(a) and 1103(a) and (d), which do not require disinterestedness for appointment or employment.

other of which prohibits the exercise of the debtor's authority in a fashion consistent with the efficient and economical administration of the estate, the permissive reading is to be preferred. This is especially so where, as with the Application, the action proposed by the debtor in possession is subject to court approval after full disclosure and notice and an opportunity for hearing. *See* FED. R. BANKR. P. 2014(a) and 2016(b). So construing section 1107(b) is consistent with general rules of statutory construction that favor preservation of the provision's utility, *see Armstrong Paint & Varnish Works v. Nu-Enamel Corp.*, 305 U.S. 315, 333 (1938), and avoid a statute's emasculation, *see Marsano v. Laird*, 412 F.2d 65, 70 (2d Cir. 1969).[11]

The possibility that a prepetition professional could be found to be an insider is an additional reason to read section 1107(b) as abrogating the requirement that a professional be disinterested to the extent the professional's non-disinterestedness is a necessary result of prepetition employment by the debtor. The definition of "insider" in 11 U.S.C. § 101(31) is inclusive.[12] Thus, where a debtor and another have a close relationship, a factual inquiry is necessary to determine whether or not the latter is an

---

[11] Reading section 1107(b) to allow the debtor in possession greater flexibility in engaging professionals is also consistent with the trend among the courts to read other provisions of the Code expansively in terms of the powers of the debtor in possession where doing so maximizes value for creditors and the action proposed by the debtor in possession is subject to court oversight. For example, today there is little doubt that a debtor in possession may obtain approval for a sale of all or most of its assets or even a sale of its business as a going concern pursuant to section 363(b)(1)'s grant of power to "use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." *See generally* 3 COLLIER ON BANKRUPTCY ¶ 363.02[3] (16th ed. 2010).

[12] Section 101(31) provides: "The term 'insider' includes— . . . (B) if the debtor is a corporation—(i) director of the debtor; (ii) officer of the debtor; (iii) person in control of the debtor; (iv) partnership in which the debtor is a general partner; (v) general partner of the debtor; or (vi) relative of a general partner, director, officer, or person in control of the debtor . . . ." 11 U.S.C. § 101(31). Section 102(3) states that "'includes' and 'including' are not limiting." 11 U.S.C. § 102(3). Accordingly, courts hold the statutory list in section 101(31)(B) to be "illustrative, not exclusive." *Stalnaker v. Gratton (In re Rosen Auto Leasing, Inc.)*, 346 B.R. 798, 804 (8th Cir. B.A.P. 2006); *see also In re Premiere Network Servs., Inc.*, 333 B.R. 126, 128 (Bankr. N.D. Tex. 2005) (same).

insider. *See, e.g.*, *In re Richmond*, 429 B.R. 263, 297 (Bankr. E.D. Ark. 2010) (determination is fact-intensive and must be decided case-by-case); *Matson v. Strickland (In re Strickland)*, 230 B.R. 276, 285 (Bankr. E.D. Va. 1999) (same). Courts have identified a party's intimate knowledge of the debtor's affairs and ability to influence a debtor's decisions as factors that would support a determination of insider status. *See, e.g.*, *In re Schuman*, 81 B.R. 583, 586 (9th Cir. B.A.P. 1987) ("The tests developed by the courts in determining who is an insider focus on the closeness of the parties and the degree to which the transferee is able to exert control or influence over the debtor."); *In re Friedman*, 126 B.R. 63, 70 (9th Cir. B.A.P. 1991) ("[I]nsider status may be based on a professional or business relationship with the debtor . . . where such relationship compels the conclusion that the individual or entity has a relationship with the debtor, close enough to gain an advantage attributable simply to affinity rather than to the course of business dealings between the parties."); *In re V.N. Deprizio Const. Co.*, 86 B.R. 545, 552 (N.D. Ill. 1988), *aff'd* 874 F.2d 1186 (7th Cir. 1989) (citing as reason for different treatment of insider under preference section the insider's knowledge of the debtor's financial situation and control over the debtor's purse strings).

Obviously, many of a debtor's prepetition professionals will have an insider's knowledge of and influence over the debtor.[13] Indeed, it is that very knowledge and influence in formulating the debtor's strategy for dealing with its financial difficulties that adds special value for the debtor in possession to retain its prepetition advisors post-petition. Yet, if the majority's construction of section 1107(b) is correct, not only are

---

[13] Indeed, at least one court has found a debtor's professional (an attorney) to be an insider of the debtor based solely on the professional's prepetition work for the debtor. *See Matter of Montagna*, 31 B.R. 10, 11 (Bankr. W.D. Pa. 1983) (attorney's insider status obtained because of the "volume and continuity of his [prepetition] representation" of debtors).

11

professionals classified as insiders barred from serving the debtor in possession, but also the United States trustee, official committees and other parties are arguably obligated to inquire into the knowledge and influence of any prepetition professional the debtor in possession seeks to engage. Such an inquiry would not only distract parties from the reorganization process. It would also be costly and would involve an awkward process of probing a professional's knowledge of the debtor.

The court considers it unlikely that Congress would have intended the courts to undertake such a task. Just as an economic relationship is a natural consequence of a professional's prepetition employment, so, too, are some of the attributes of insider status. A better reading of section 1107(b) is one that relieves the court of the need to investigate and then disqualify a professional based solely on those inevitable results of prepetition representation or employment.

The history of the debtor in possession role and the disinterestedness requirement also supports the minority reading of section 1107(b).[14] Under chapter X of the Bankruptcy Act (the "Act"), appointment of a trustee was automatic in almost all cases, and he and his professionals had to be disinterested. Under chapter XI of the Act, where the debtor retained control as a debtor in possession, there was no requirement of disinterestedness. It follows that in a chapter 11 case under the Code,[15] if the debtor remains in possession, where a professional would fail the disinterestedness test "solely because of [its] employment by or representation of the debtor" prepetition, Congress intended by the words "[n]otwithstanding section 327(a)" that that lack of

---

[14] The legislative history pertinent to section 1107(b) does not shed light on Congress's intent, so the court must look to prior law for any guidance as to legislative intent.

[15] Chapter 11 of the Code replaced, *inter alia*, both chapter X and chapter XI of the Act. *See* 1 Norton Bankruptcy Law and Practice § 1:8 (2008).

12

disinterestedness would not disqualify the professional. *See generally In re Best Western Heritage Inn P'ship*, 79 B.R. 736, 739-40 (Bankr. E.D. Tenn. 1987); Richard Lieb, *The Section 327(a) "Disinterestedness" Requirement*, 50 AM. BANKR. INST. L. REV. 101, 111–12 (1997) (There is "no particularly good reason for requiring the attorney for the debtor in possession [under chapter 11] to be perfectly disinterested," given the safeguards in the Code.).

Public policy considerations support the minority interpretation of section 1107(b) as well. First, it is axiomatic that a debtor in possession, like any client, should be able to choose its own professionals. *See In re Roberts*, 75 B.R. 402, 406 (D. Utah 1987) (noting that a debtor has an important interest in hiring counsel of its choice). Allowing a debtor in possession discretion to choose its professionals allows it to control the progress of its bankruptcy case. *Id.* It also keeps administrative expenses low by providing the debtor in possession the opportunity to retain professionals that do not have to spend significant time and resources becoming familiar with the debtor's operations. *Id.* Moreover, every professional becomes a post-petition creditor following employment by the debtor in possession. Why a post-petition administrative priority claim should be found to create no conflict of interest while a prepetition general unsecured claim automatically disqualifies the creditor professional eludes the court.[16]

Second, the necessary consequence of always disqualifying a professional from employment based on that professional's creditor status is to motivate a debtor to pay its

---

[16] Likewise, an attorney employed under 11 U.S.C. § 327(e) may hold a claim against the estate. *See, e.g., In re DeVlieg, Inc.*, 174 B.R. 497, 503 (N.D. Ill. 1994). Professionals employed by a committee may hold claims—section 1103(b) requires only that an attorney or accountant not "represent any other entity having an adverse interest in connection with the case." 11 U.S.C. § 1103(b).

professionals in full prior to filing the bankruptcy petition. Encouraging this practice is contrary to public policy and common sense. A debtor about to file bankruptcy should conserve its cash for use postpetition rather than be forced to expend it to protect its professional relationships.

Third, a professional paid on the eve of bankruptcy may have received a preference—and, as preferee, the professional has a more troubling conflict with the debtor in possession and its estate than it would as a creditor.[17] Adopting a construction of section 1107(b) that allows professionals to retain their prepetition claims saves the debtor from having to pay its professionals in full before filing, thereby conserving cash and avoiding preferences.[18]

As to the precedents cited in support of the majority construction of section 1107(b), many of the decisions involved factual scenarios distinguishable from that at bar—typically, the relationship between the debtor and the professional was more than a simple debtor–unsecured creditor relationship. *See, e.g.*, *Childress v. Middleton Arms, L.P. (In re Middleton Arms, L.P.)*, 934 F.2d 723 (6th Cir. 1991) (reserving question of whether prepetition claim derived from prior work for debtor disqualifies a professional on its own and denying employment because the professional was also an insider of the debtor); *In re Pierce*, 809 F.2d 1356 (8th Cir. 1987) (prohibiting employment of attorney holding a prepetition undisclosed mortgage to secure the attorney's claim); *In re CIC Inv.*

---

[17] *See, e.g.*, *In re Pillowtex, Inc.*, 304 F.3d 246 (3d Cir. 2002) (discussing conflicts between the debtor in possession and its attorneys caused by preferences); *In re Mich. Gen. Corp.*, 78 B.R. 479 (Bankr. N.D. Tex. 1987) (same)

[18] An alternative way to become disinterested that appears to be available to the creditor professional under the majority interpretation of section 1107(b) would be transfer by the professional of its prepetition claim to an affiliate. Upon its transfer, the claim would be held by the affiliate and the professional would no longer be a creditor. *See* 11 U.S.C. § 101(10)(A) ("'[C]reditor' means— (A) entity that has a claim against the debtor . . . .").

14

*Corp.*, 175 B.R. 52 (B.A.P. 9th Cir. 1994) (disallowing employment of a professional that secured a prepetition claim); *In re Roberts*, 75 B.R. 402 (D. Utah 1987) (disallowing employment of law firm that was a prepetition creditor, represented a creditor, and failed to disclose its relationships with the debtors); *In re Leisure Dynamics*, 33 B.R. 121 (D. Minn. 1983) (disallowing employment of an insider of the debtor); *In re Patterson*, 53 B.R. 366 (Bankr. D. Neb. 1985) (prohibiting employment of law firm that was a prepetition creditor, employed an attorney holding an interest in property in which debtor also held an interest, and failed to disclose these relationships); *In re Anver Corp.*, 44 B.R. 615 (Bankr. D. Mass. 1984) (prohibiting employment of prepetition creditor who was also an equity holder and officer of the debtor); *In re B.E.T. Genetics*, 35 B.R. 269 (Bankr. E.D. Ca. 1983) (denying compensation to an attorney who received loans from the debtor, served as a director of the debtor, and was a prepetition creditor of the debtor).

Those cases that bar retention of a professional *solely* because the professional holds a general unsecured claim are few in number and, however persuasive their source, do not constitute binding precedent for this court. *See, e.g., U.S. Trustee v. Price Waterhouse*, 19 F.3d 138, 141 (3d Cir. 1994) (holding that the Code "unambiguously forbid[s] a debtor in possession from retaining a prepetition creditor").[19]

The court's adoption of the minority interpretation of section 1107(b) does not provide a debtor in possession with *carte blanche* to employ any professional that is a prepetition creditor. Section 1107(b) only excuses a prepetition claim arising from an ordinary employment relationship with the debtor. There may be other circumstances

---

[19] The Court of Appeals in *Price Waterhouse* did not discuss the effect of section 1107(b) on the requirement of disinterestedness, and apparently it was not argued to the court. *Price Waterhouse*, 19 F.3d at 141-42. Nor was the issue addressed in any prior opinions of which the *Price Waterhouse* court reviewed the record. *See In re Sharon Steel*, 152 B.R. 447 (Bankr. W.D. Pa. 1993); *In re Sharon Steel*, 154 B.R. 53 (Bankr. W.D. Pa. 1993).

15

that do not result solely from that prior employment which would disqualify the professional from employment under section 327.[20] Even holding an unsecured claim that is so large in amount as to control acceptance of a plan or constitute an interest adverse to the estate would likely require disqualification. The court is satisfied the case at bar involves no such circumstance.

### 2. Application

Though BMY holds a prepetition claim, section 1107(b) permits the debtor in possession to employ BMY under section 327(a) so long as this claim resulted solely from BMY's prepetition "employment by or representation of" Debtors and does not otherwise cause BMY to be adverse to the estate. The record indicates BMY's prepetition claim arose solely from its employment by Debtors prior to Debtors' bankruptcy filing. Section 1107(b)'s test is met and BMY's employment is permissible under section 327.

### III. CONCLUSION

The court concludes that the minority interpretation of section 1107(b), like the majority construction, accords with the plain meaning of that provision. Unlike the majority view, however, it gives full force and effect to all of the words in the statute and is consistent with policies favored by chapter 11. The court therefore holds that a debtor in possession may employ a professional notwithstanding that the professional is a creditor if the professional is a creditor "solely because of [its] employment by or representation of the debtor" prepetition. Thus, BMY may serve as accountant for Debtors without relinquishing its prepetition claims.

---

[20] These include, but are not limited to, other tests for disinterestedness (e.g., service on the debtor's board), undisclosed relationships per Rule 2014, and ownership of security interests.

16

The Application must therefore be APPROVED and the Objection OVERRULED.

It is so ORDERED.

# CERTIFICATE OF NOTICE

```
District/off: 0539-4          User: mmaldino            Page 1 of 1              Date Rcvd: Sep 17, 2010
Case: 10-43790                Form ID: pdf012           Total Noticed: 1

The following entities were noticed by first class mail on Sep 19, 2010.
aty          +Sharon L. Stolte,   Stinson Morrison & Hecker,   12 Corporate Woods,   10975 Benson,   Suite 550,
               Overland Park, KS 66210-2132
The following entities were noticed by electronic transmission.
NONE.                                                                                                TOTAL: 0
             ***** BYPASSED RECIPIENTS *****
NONE.                                                                                                TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.
```

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: Sep 19, 2010**            **Signature:** _Joseph Speetjens_