Case 10-43790-dml11 Doc 269 Filed 03/27/12 Entered 03/29/12 09:21:16 Page 1 of 14
Main Document      Page 1 of 14

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

_____
**United States Bankruptcy Judge**

**Signed March 27, 2012**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CHAPTER 11 |
| KLAAS TALSMA | § | |
| D/B/A KLAAS TALSMA DAIRY | § | |
| D/B/A FRISIA FARMS | § | CASE NO. 10-43790-DML-11 |
| FRISIA FARMS, INC. | § | CASE NO. 10-43791-DML-11 |
| FRISIA HARTLEY, LLC, | § | CASE NO. 10-43792-DML-11 |
| | § | |
| DEBTORS. | § | JOINTLY ADMINISTERED |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is the *Second Amended Final Application for Allowance of Accountant's Fees* (the "Application") filed by Klaas Talsma d/b/a Klaas Talsma Dairy d/b/a Frisia Farms, Frisia Farms, Inc. and Frisia Hartley, LLC ("Debtors") by which Debtors seek authority to pay Boucher, Morgan and Young, P.C. ("BMY") for

1

accounting services provided to Debtors during their chapter 11 cases.[1] The United States trustee (the "UST") filed an objection to the Application (the "Objection"), and the court conducted a hearing respecting the Application and Objection on January 30, 2012.

This matter is subject to the court's core jurisdiction. 28 U.S.C. §§ 1334 and 157(b)(2)(A). This memorandum opinion constitutes the court's findings of fact and conclusions of law. FED. R. BANKR. P. 7052 and 9014.

## I. BACKGROUND

BMY served as Debtors' accountants prepetition. At the time these cases were commenced, BMY was owed $11,700.00 by Debtors. BMY was employed in these chapter 11 cases on application of Debtors following a hearing to consider *The United States Trustee's Limited Objection to Application to Employ Boucher, Morgan and Young, P.C., Accountant* (the "Employment Objection") filed by the UST. By the Employment Objection, the UST took the position that BMY must either forfeit its claim for its prepetition fees or be disqualified by reason of being a creditor of Debtors, and so not disinterested under section 101(14)(A) of the Bankruptcy Code (the "Code").[2] By a prior opinion (see *In re Talsma*, 436 B.R. 908 (Bankr. N.D. Tex. 2010) (the "Prior

---

[1] The Application (at ¶4) states that it is made by BMY. However, the author of the Application was Debtors' counsel and the Application is signed by him acting in that capacity.

[2] 11 U.S.C. §§ 101 et seq. Section 101(14) provides:

(14) The term "disinterested person" means a person that –

(A) is not a creditor, an equity security holder, or an insider;

(B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

(C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

2

Opinion")), the court rejected the UST's argument, overruled the Employment Objection and authorized BMY's employment under Code § 327(a).[3] In the Prior Opinion the court concluded that Code § 1107(b)[4] provided a limited exception to the disinterestedness requirement of section 327(a) such that BMY could serve as Debtors' accountants without waiving its claim for prepetition services. The UST neither appealed nor sought reconsideration of the court's ruling on the Employment Objection.

Over the following year, BMY provided accounting services to Debtors. It is apparent Debtors benefited from BMY's work (and that of their other professionals), as Debtors confirmed a consensual plan which provided for full payment of all claims against them.

During the course of the chapter 11 cases, BMY invoiced Debtors both for the prepetition work giving rise to its claim, as well as for postpetition services, and Debtors duly paid those invoices. BMY and Debtors did so without obtaining any authorization from the court[5] -- this despite the fact that BMY was simultaneously serving as a debtor's accountants in another chapter 11 case pending in this court in which the firm complied with applicable law and rules regarding professional compensation. At the January 30,

---

[3]    Section 327(a) provides:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

[4]    Section 1107(b) provides:

(b) Notwithstanding section 327(a) of this title, a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case.

[5]    Debtors and BMY made no secret of the payments. They are openly reflected on Debtors' monthly operating reports.

3

2012, hearing, the court directed that BMY return to Debtors all the payments received during the chapter 11 cases, pending further order of the court.[6]

BMY's fees were the subject of two prior applications filed by Debtors. The second of these (the "Prior Application") was considered at a hearing held on September 29, 2011.[7] Following that hearing, the court ruled that BMY's failure to follow the rules governing compensation was inadvertent and as so excusable. The court also directed that BMY amend its application for compensation to conform to the UST's guidelines regarding time entries, *etc*. BMY did so in the Application.

The UST had objected to the Prior Application both because of BMY's failure to comply with his guidelines and for the reasons stated in the Objection. Because at the September 29th hearing the court disposed of at least one of the UST's bases for contesting both the Prior Application, and the Application, the court considers the Objection as, in part, a motion seeking reconsideration of the September 29th ruling.

By the Objection, the UST argues that the Application should be denied in full. The UST first, again, argues that BMY was not disinterested because of its prepetition claim and so was disqualified from employment. Relying on *In re Delta Servs. Indus., Etc.*, 782 F.2d 1267 (5th Cir. 1986), the UST urges that he is able to resurrect this argument because the Prior Opinion was an interlocutory order.[8] Second, the UST

---

[6] As discussed below, in so ordering, the court reconsidered a prior ruling by Judge Robert C. McGuire.

[7] Hon. Robert C. McGuire, sitting by designation.

[8] In his oral ruling at the September 29th hearing, Judge McGuire found as fact that the Prior Opinion was indeed an interlocutory order. While today it would not make such a finding, the question appearing to be one of law, the court considers itself bound by this aspect of Judge McGuire's ruling.

4

asserts that BMY's conduct in seeking and accepting payment of its claim and fees from Debtors without court approval should result in denial of the Application.

## II. DISCUSSION

Payment of professionals in a bankruptcy case is ordered by the court pursuant to its equitable jurisdiction. 11 U.S.C. § 327; *In re Energy Partners, Ltd.*, 422 B.R. 68, 85 (Bankr. S.D. Tex. 2009) (noting that in awarding compensation, the bankruptcy court exercises its *in rem*, equitable jurisdiction) (quoting *In re Mirant Corp.*, 354 B.R. 113, 134 (Bankr. N.D. Tex. 2006) (citing 1 COLLIER ON BANKRUPTCY ¶ 2.09 (14th ed. 1974)). As with any request that the court exercise its equitable powers, the applicants – and those contesting the relief sought – are adjured to come before the court with clean hands. *See In re Cedar Shore Resort, Inc.*, 235 F.3d 375, 381 (8th Cir. 2000) (concluding that the "'powerful equitable weapons'" of the bankruptcy court should only be available to those with "'clean hands'") (quoting *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986) (noting that a good faith filing standard protects the jurisdictional integrity of the bankruptcy courts by rendering their equitable powers available only to those debtors and creditors with "clean hands")). Regrettably, in the case at bar, neither BMY[9] nor the UST can claim the sort of pristinely clean hands usually required of one invoking the court's equitable powers. The UST, in again raising the issue of BMY's lack of disinterestedness due to its status as a creditor, is playing an unfair game of "gotcha" with BMY. BMY, on the other hand, was caught red-handed violating rules and law governing payment of professionals and satisfaction of prepetition debt.

---

[9] As discussed above, the Application was made by Debtors – who failed, as did BMY, to follow the rules, but BMY is the true party in interest opposed to the UST.

A. **Disinterestedness**

1. **The Conduct of the UST**

The UST's conduct is tainted by his insistence that he should now be able to pursue the issue of BMY's disinterestedness. Even accepting that the Prior Opinion was an interlocutory order, the UST could have sought leave of the District Court to appeal it. 28 U.S.C. § 158(a)(2). Indeed, pursuant to 28 U.S.C. § 158(d), the UST might have asked that appeal of the Prior Opinion be considered by the Court of Appeals for the Fifth Circuit. The issue dealt with by the Prior Opinion is one on which neither the Supreme Court nor the Court of Appeals for the Fifth Circuit has spoken, and employment of BMY (or another accounting firm) was a necessary step in the progress of the Debtors' chapter 11 cases; thus an appeal from the Prior Opinion appears to meet the requirements of both subdivision (i) and (iii) of 28 U.S.C. § 158(d)(2)(A).[10] Certainly the court's ruling that BMY was not disqualified as one of Debtors' professionals by reason of its prepetition claim is precisely the sort of decision of which appeal should not, due to the potential prejudice to the prevailing party, be deferred. *See Johnson v. Jones*, 515 U.S.

---

[10]   28 U.S.C. § 158(d)(2)(A) states:

(d)(2)(A)The appropriate court of appeals shall have jurisdiction of appeals described in the first sentence of subsection (a) if the bankruptcy court, the district court, or the bankruptcy appellate panel involved, acting on its own motion or on the request of a party to the judgment, order, or decree described in such first sentence, or all the appellants and appellees (if any) acting jointly, certify that –

(i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;

(ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or

(iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken;
and if the court of appeals authorizes the direct appeal of the judgment, order, or decree.

6

304, 309-10, 115 S.Ct. 2151, 2154, 132 L.Ed.2d 238 (1995) (stating that an interlocutory appeal may avoid injustice by quickly correcting a trial court's error or directing the course of litigation such that a party may be released of the burdens of future proceedings); *Eldredge v. Martin Marietta Corp.*, 207 F.3d 737, 740 (5th Cir. 2000) (stating that the requirement that a judgment be final in order to be appealed pursuant to FED. R. CIV. P. 54(b) reflects a balancing of the danger of hardship or delay which can be alleviated by immediate appeal and a desire to avoid piecemeal appeals) (citing *PYCA Indus., Inc. v. Harrison Cnty. Waste Water Mgmt. Dist.*, 81 F.3d 1412, 1421 (5th Cir. 1996)); *Farris v. Broaddus*, 2009 WL 5184186, at *4-5 (D. Colo. 2009) (noting that interlocutory appeals under 28 U.S.C. § 1292(b) may be certified when immediate and final decision of controlling questions can prevent extended and expensive proceedings in the trial court).

The UST, however, made no effort to have the Prior Opinion reviewed. He did not ask that it be reconsidered. He did not even advise the court – or, so far as the court is aware, Debtors or BMY until he objected to the Prior Application – that he intended to raise again the issue of BMY's disqualification *after* BMY completed its work and was seeking compensation.

Rather, the UST kept silent, letting the court, Debtors and BMY believe he had acquiesced in the court's ruling in the Prior Opinion. Debtors and BMY acted in reliance on the disposition of the disinterestedness question.[11] The UST's conduct amounted to "laying behind the log," to the potential detriment of BMY and Debtors.

---

[11] Should the UST's disinterestedness argument prevail on appeal of the court's decision on the Application, waiver by BMY of its prepetition claim after the fact would not necessarily cure the problem such that the firm could then be compensated. BMY believed – reasonably – that it could serve as Debtors' accountants while keeping its prepetition claim. If now that claim is determined

7

Indeed, on the facts before the court, the UST's failure to seek review of the Prior Opinion arguably could even be seen as adoption of a position before the court that judicially estops the UST from now again raising the disinterestedness issue.[12]

The UST, like most officers of the government, is largely insulated from punishments a court might impose on parties and their counsel. The court must assume the UST, an agent of the government, will act in good faith, as a fair and honest neutral. It is the court's confidence in the UST's probity that both makes his service to the system in policing professionals valuable, and justifies the assumption that his motives are pure and his acts unsullied by sanction-worthy malice. In the case at bar, the UST has not in his conduct met the court's high expectations.

**2. Disinterestedness: the Merits**

The court will largely rely on the Prior Opinion in its decision respecting the merits of the UST's disinterestedness argument. But the present context brings in yet one more provision of the Code that supports the court's conclusion that holding a prepetition

---

to result in BMY's disqualification, the firm's services to Debtors will have been tainted and may not be compensable. 11 U.S.C. § 328(c); *See also In re Federated Dep't Stores, Inc.*, 44 F.3d 1310, 1320 (6th Cir. 1995); *In re Greystone on Payette, LLC*, 410 B.R. 900, 904 (Bankr. D. Idaho 2009); *In re eToys, Inc.*, 331 B.R. 176, 193-94 (Bankr. D. Del. 2005); *In re Am. Metallurgical Prods. Co., Inc.*, 228 B.R. 146, 160 (Bankr. W.D. Pa. 1998).

[12]   Judicial estoppel is a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from later assuming an inconsistent position. *See In re Coastal Plains, Inc.*, 179 F.3d 197, 205-06 (5th Cir. 1999) (citing *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988)). The doctrine is generally applied where intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for those seeking justice. *See Id.* at 206 (citing *Scarano v. Central R.R. Co.*, 203 F.2d 510, 513 (3d Cir. 1953)). A party's silence or failure to object to a debtor's actions in a bankruptcy proceeding may result in judicial estoppel by virtue of its silence. *See Id.* at 209-10 (discussing how judicial estoppel may prevent a debtor or related party who fails to disclose a claim from later pursuing that claim). Non-disclosure may be considered an affirmative representation in some contexts. *See In re Bilstat, Inc.*, 314 B.R. 603, 610 (Bankr. S.D. Tex. 2004). Inadvertent failure to disclose is generally only found when the party lacks knowledge or has no motive for concealment. *See Id.*; *In re Coastal Plains, Inc.*, 179 F.3d at 210. It is obvious that the UST had knowledge of the asserted basis of BMY's disinterestedness and the UST's silence of approximately one and one-half years indicates an affirmative acceptance of BMY's disinterestedness and this court's ruling in the Prior Opinion.

8

claim does not alone disqualify a professional from representing a debtor in possession. Section 328(c) of the Code states:

> (c) Except as provided in section 327(c), 327(e), or 1107(b) of this title, the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

Section 328(c) on its face excepts professionals covered by section 1107(b) from the general rule that the discovery that a professional is not disinterested can result in denial of compensation. The court can find no reasonable way to read section 328(c) other than to permit compensation to a debtor in possession's professional despite such professional being not disinterested so long as, as specified by section 1107(b), the lack of disinterestedness stems from the professional's prepetition representation of the debtor. Further, the inclusion of section 1107(b) in a clause with sections 327(c) and (e) – two provisions that clearly allow a professional to serve in a case while holding a claim or representing a claimant – indicates that Congress intended section 1107(b) to permit a claimant to serve as a professional employed under section 327 of the Code. *See In re Contractor Tech., Ltd.*, 2006 WL 1492250, at *5-7 (S.D. Tex. 2006) (affirming a bankruptcy court order employing a professional pursuant to section 327(c) who also simultaneously represented eight creditors) (citing *In re W. Delta Oil Co., Inc.*, 432 F.3d 347, 355 (5th Cir. 2005)); *In re Johnson*, 312 B.R. 810, 821-23 (E.D. Va. 2004) (affirming an order allowing compensation of a trustee's professional employed under 327(c) despite the professional's simultaneous representation of a creditor because there was no actual conflict of interest); *In re Henlar, Ltd.*, 1997 WL 4567, at *3-4 (E.D. La.

9

1997) (affirming a bankruptcy court order employing a professional pursuant to section 327(e) who also held a prepetition claim against the debtor).

### B. Postpetition Payments

The UST is on firmer ground in objecting to payment of fees to BMY based on its seeking and receiving payments of its prepetition claim outside of Debtors' plan, and seeking and obtaining payment for postpetition services without court authorization. To the extent the court ruled on September 29, 2011 that BMY's conduct was excusable, it now, upon reconsideration, revokes that decision. This conduct of BMY would be sanctionable (as discussed below) even if BMY could claim ignorance of the Code; as it is, BMY having acted in accordance with the rules in another case pending before the court, the firm's failures are simply inexcusable.[13]

#### 1. Postpetition Fees

During the course of Debtors' chapter 11 cases BMY invoiced Debtors, and Debtors paid to BMY, fees and expenses for postpetition services totaling $44,217.20. Neither Debtors nor BMY sought court approval of these payments. Thus, BMY failed to comply with Code § 330(a) and FED. R. BANK. P. 2016(c).

Moreover, the transmission of invoices by BMY to Debtors arguably constituted an "act to obtain possession of property of [Debtors'] estate," and so was a violation of the automatic stay of Code § 362(a)(3). Certainly, the payments to BMY were "not

---

[13] Debtors argue that, because their plan provides full recovery to creditors and leaves equity in place, the deficiencies in BMY's behavior should be overlooked. In some cases the court would agree: where the result of a chapter 11 case is full satisfaction of creditors and equity retains an interest in the reorganized debtor, better use can be made of court time and the resources of parties – especially those like the UST that are funded by taxpayers – than interposing objections to fee applications to which those with economic interests have offered no opposition. In the case of BMY, however, there have been flagrant violations of the Code, and the UST was fully justified in bringing them to the court's attention.

10

authorized under [the Code] or by the court" and so remained subject to recovery pursuant to Code § 549(a).

The court does not believe BMY's failure to comply with applicable law (or that of Debtors) was advertant.[14] Debtors disclosed the payments to BMY in their monthly reports; there is no evidence that Debtors and BMY were consciously and nefariously trying to circumvent the Code or rules. Nevertheless, even an innocent failure to comply with applicable law can result in the forfeiture of compensation. *See In re Futuronics Corp.*, 655 F.2d 463, 469 (2nd Cir. 1981) (noting even technical noncompliance with the rules governing compensation has in some cases resulted in denial of compensation)); *In re Chi., Milwaukee, St. Paul and Pac. R.R. Co.*, 840 F.2d 1308, 1313 (7th Cir. 1988) (supporting the proposition that rules governing compensation must be applied strictly, "even if the result is harsh in cases of inadvertent, *de minimus*, or only technical violations") (citing *Wolf v. Weinstein*, 372 U.S. 633, 654, 83 S.Ct. 969, 982, 10 L.Ed.2d 33 (1963)); *In re Endeco, Inc.*, 1 B.R. 64, 69 (Bankr. D.N.D. 1979) (quoting Justice Cardozo and noting that the standard of conduct for professionals must be "'held at a higher level than that trodden by the crowd'" in denying fees for improper behavior).

### 2. Prepetition Claim

An even more serious problem is presented by BMY's efforts to collect its prepetition claim. Not only is the payment of the claim recoverable under Code § 549(a); also there can be no question but that invoicing the amount of the claim to Debtors was an "act to collect…or recover a claim against [Debtors] that arose before the commencement of [Debtors' chapter 11 cases]." 11 U.S.C. § 362(a)(6). BMY thus violated Code § 362(a)(6).

---

[14] The court thus agrees on this with Judge McGuire.

11

Even had BMY been unaware of Debtors' bankruptcy cases, its conduct would have been a clear stay violation. *See In re Cueva*, 371 F.3d 232, 236 (5th Cir. 2004) (stating that actions in violation of the automatic stay are invalid, whether or not there is knowledge of the stay) (citing *In re Calder*, 907 F.2d 953, 956 (10th Cir. 1990); *In re Jackson*, 392 B.R. 666, 671 n. 11 (Bankr. S.D. Miss. 2008) (explaining that while knowledge of the bankruptcy is a relevant consideration as to the willfulness of a violation of the stay, it is not a relevant consideration as to whether the stay was violated). As it is, there is absolutely no question that BMY was fully aware – having been retained by court order – that Debtors were in bankruptcy. As to whether BMY knew about the automatic stay, in the first place, ignorance does not excuse a stay violation. *See, e.g., In re Smith*, 876 F.2d 524, 525-26 (6th Cir. 1989); *In re Freemyer Indus. Pressure, Inc.*, 281 B.R. 262, 266-67 (Bankr. N.D. Tex. 2002). In the second place, the court is not prepared to excuse a stay violation by a professional employed in a case before it by court order on the assumption that the professional was so lacking in sophistication as to be unaware of critical elements of the statutory framework governing that case.

In short, BMY's conduct was egregious and unforgivable. It warrants a reduction of fees and even sanction by the court, first, because, though perhaps inadvertent, it constitutes contempt of the court. *See In re McClure*, 420 B.R. 655, 660 (Bankr. N.D. Tex 2009), *partially vacated on other grounds by*, 430 B.R. 358 (Bankr. N.D. Tex. 2010) (holding a creditor in civil contempt for knowingly violating a discharge stay because the creditor's acts that violated the stay were intentional); *In re Skinner*, 917 F.2d 444, 447-49 (10th Cir. 1990) (concluding that Congress granted bankruptcy courts civil contempt

power through Code § 105 and 28 U.S.C. § 157 and affirming a sanction for contempt for violation of the automatic stay); *In re MD Promenade, Inc.*, 2009 WL 80203, at *12-14 (Bankr. N.D. Tex Jan. 8, 2009) (holding a creditor in civil contempt for violation of the automatic stay pursuant to Code § 105 and noting that specific intent to violate the stay is not required, only that the acts were intentionally committed). Second, BMY, which serves and presumably wishes to serve as a professional in other cases in this court, must be taught a lesson. Third, other professionals – and, for that matter, parties in interest in general – must see that violation of a bankruptcy stay is so serious a matter that extreme caution is called for in dealings with a trustee or debtor in possession.

### 3. Retention of Funds

At the January 30, 2012, hearing the court directed that BMY return to Debtors all sums received from Debtors during their chapter 11 cases without court approval. The court assumes this has been done.[15]

As a general rule, prompt cure of its contempt by a party that has unintentionally violated the automatic stay will constitute sufficient cure to satisfy the court. In the case at bar, however, it can only ameliorate, rather than wholly satisfy, the court's concerns. BMY, unlike most stay violators, was a professional employed in the very case in which it was guilty of both contempt and disregard of the regimen governing payment of professionals. In this situation a court-imposed penalty is essential.

The Application seeks fees and expenses in the amount of $57,867.20. The court will reduce its award by $25,000 to account for BMY's misconduct. The Application is

---

[15] Debtors' counsel is directed to report to the court within 24 hours following the entry of this memorandum opinion and order that BMY, prior to entry of this memorandum opinion and order, complied with the court's direction. If BMY did not comply, the court will determine what additional action is appropriate.

13

thus granted to the extent of $32,867.20. Should the UST appeal from the court's ruling on the Application, the court will consider awarding BMY an additional amount of up to $25,000 to offset its cost of defending the appeal.[16]

### III. CONCLUSION

To the extent discussed above the Application is **GRANTED**.

Except as discussed above, the Objection is **OVERRULED**.

To the extent the order of the court of October 14, 2011, which was based on the ruling of September 29, 2011, is inconsistent with this memorandum opinion, it is **VACATED**.

It is so **ORDERED**.

---

[16] Debtors are in the awkward position of supporting payment of BMY to their economic detriment. If BMY is not paid, Debtors will save the amount of the firm's fees. It is subject to question therefore, whether Debtors can serve as BMY's advocates on an appeal. If the UST appeals the court's ruling on disinterestedness it is important that appellate courts have the benefit of a truly adversarial contest. It is to ensure that BMY's case is adequately made (and the court's views defended) on that issue that the court reserves the ability to reimburse BMY for retention of its own counsel.